**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>MASTERS PLACE CONDOMINIUMS PROPERTY OWNERS ASSOCIATION, INC.,<br><br>Debtor. | Case No.: 26-10313 TBM<br>Chapter 11 (Subchapter V) |
| MASTERS PLACE CONDOMINIUMS PROPERTY OWNERS ASSOCIATION, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FIRST AMERICAN TRUST, FSB, AS TRUSTEE; WORLDMARK, THE CLUB; WYNDHAM VACATION RESORTS INC; ANDRES ABEYTA; SIXTO RAFAEL ACEVEDO; MONICA ADAMS; NEAL ADAMS; VICTORIA ADDISON; ROBERT ALAN ALBERTS; BARBARA S L ALBRIGHT; CHARLES R E ALBRIGHT; LISA ALEXANDER, AS TRUSTEE OF THE TIMOTHY BRYAN ALEXANDER AND LISA R ALEXANDER REVOCABLE LIVING TRUST DATED 3/16/16; TIMOTHY BRYAN ALEXANDER, AS TRUSTEE OF THE TIMOTHY BRYAN ALEXANDER AND LISA R ALEXANDER REVOCABLE LIVING TRUST DATED 3/16/16; MARGARET ALGIRE; RICHARD ALGIRE; JAMES ARAGON; LEROY ARAGON; PRISCILLA CDE ARAGON; JAMES ARNOLD; CHRISTINESUIZZO ARONSON; DANIEL ARONSON; GALEN PAT AUSTIN; GEORGE AUSTIN; MARJORIE AUSTIN; PEGGY LEE MCCRARY AUSTIN; DAVID BARRETT; FRED BARTLETT; JANICE | Adv. No.: 26-1169 TBM |

BARTLETT; KAREN BATEMAN; KATHRYN DECKER BEARDAIN; WELDON KEITH BEARDAIN; TERI BECKER; JUDITH MILLER BENNETT; MYERS BENNETT; BARBARA BERGER; PHILIP BERKOWITZ; KENNETH BEUTEL; C WAYNE BICKERSTAFF; MARJORIE BICKERSTAFF; BRITT BILBERRY; ELVETA BISHOP; LUKE BISHOP; IRENE BLUETT; ROGER BLUETT; BRENT BOYACK; MARCIA BOYACK; EDWARD BRAATEN; REBECCA BRAATEN; CYNTHIA BRANDEL; ROBERT BRANDEL; LEE BRAVERMAN; NAZMA BRAVERMAN; JEANNI BRISKI, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; STEVEN BRISKI, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; ANN KATHERINE BROOKS; JAMES BRUMMER; KATHRYN JO BURROW; TOMMY BURROW; HANAN BUSHRA; RAFEEK BUSHRA; KATHLEEN BYRD; MICHAEL BYRD; CAROLYN BYRUM; CAROLYN BYRUM, BY LORRIE BYRUM AS POA; LARRY BYRUM, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; ALICIA CABALLERO; CRAIG CAMPBELL; GAIL CAMPBELL; TAMMIE CAMPBELL; FLORIE CAPORUSCIO; COURTNEY CARLISTO; JOHN CARLISTO; DARREN CASE; JANET CASE, TRUSTEE; JACLYN CHARNEY; KENNETH CHARNEY; SHANNON CHARTRAND; CASIMIRO FLOYD CHAVEZ; LUCILLE CHAVEZ; RICHARD CHAVEZ; THERESA CHAVEZ; LYNN MARIE CLARK; CHARLES COCHRAN; JANET CONNOLLY; ARLYN GLENN CONVERSE; DEBRA BROWN

CONVERSE; RODNEY COOPER; VERNON COOPER; NANCY COOPER, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; DENNIS CORBETT; KAREN CORBETT; BOYD CORNELISON; JIMMY COTANT; BARBARA COTTOS; TIMOTHY COTTOS; SANDRA COY; TERRELL COY; RITA CULWELL; CHERYL CHRISTINE CURRY; LARRY CURRY; CEPHAS CURTIS; DOROTHY CURTIS, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; NELLIE DARNELL; WALTER DARNELL; PATRICIA DAVIDSON, TRUSTEE; ROBERT PAUL DAVIDSON, TRUSTEE; CHAD ERIC DAVIS; ELIJAH DAVIS; EVA DAVIS; RUBY STACY DAVIS; DONNA DAY; ROSS DAY; CHARLOTTE DEBUSK; JUSTIN DEBUSK; JUDITH DEVARGAS; ROBERT DEVARGAS; CATHERINE DEWSNUP; DANIEL DIDIO; VICKI DIDIO; ANTHONY DIEHL; DONALD DIXON; MARCIA DIXON; GREG DOAK; SANDRA DOCKTER; SHANE DOCKTER; WILLIAM DONHAM; JOY DORMAN; JULIA DORMAN; DAVID DOZIER; DEBRA DOZIER; CELESTE DRAGWA; LEONARD DRAGWA; KENNETH DUENSING; ZITA DUENSING; ALICE DUPONT; ASHLEY DUPONT; CHARLES DUPONT; ERIC DUPONT; PATSY DUSBABEK; R THOMAS DUSBABEK; JOE DUTCHER; KATHERINE DUTCHER; DARLENE EDWARDS; JERRY EDWARDS; CHARLES ELLIOTT; CHARLENE ELLIS; OLIVIA ELLIS; DANIEL ENFIELD; LEONORE RENEE ENFIELD; PAULA EVANS; WAYNE EVANS; AMBER FAVAREGH; NOAH FAVAREGH; DONALD DALE FELTSEN; SHERIE LYNN FELTSEN;

DONALD FIELDS; SHERRY FIELDS; ARIA FINCH; BOB FINCH; FINLEY MOTORS INC; EARL FLEMING; ROBERT FORTNER; JAMES FREUDENBERGER; JANET FREUDENBERGER; MELISSA DAWN FUTRELL; PAUL FUTRELL; BRENDA GILES; DEAN GILES; JANE GILL; FRANCIS GILL, DECEASED, BY SUSAN BIGGS AS EXECUTOR; FRANCIS GILL, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; ARMANDO GONZALEZ; MARTHA SUE BECTON GOODNIGHT; WILLIAM GOODNIGHT; SHELLY GOODWIN; TODD GOODWIN; ALAN GORE, TRUSTEE; NANCY GORE, TRUSTEE; CAROLINA MC GRATH; ANGELA RENEE GREEN; JAMES STEWART GREEN; ARDITH GREENING; ARLAN ROBERT GREENING; DENNIS GROSS; SHERYL GROSS; PAMELA GROVER; LARRY GRUBE, TRUSTEE; LYDIA GRUBE, TRUSTEE; MARK GUSTAFSON; SUZANNE GUSTAFSON; DAVID G GUTIERREZ; DELORES GUTIERREZ; KAREN HANKS; JANIS HANSEN, TRUSTEE; KENT HANSEN, TRUSTEE; JUDITH HARDER; THOMAS HARDER; JACK MILTON HARDGRAVE; MARIAN HARDING; MARK HARDY; NIKKI HARDY; GERALD HARRIS; JAMIE HARRIS; JUSTIN HARRIS; KATHLEEN HARRIS; ROBERT HARRIS; BRIAN HASENAUER; RUTH HASENAUER; KAREN JO HASENBANK; MERION HAWORTH; REX HAWORTH; TERESA HAYES; JERALD HELFRICH; SANDRA DEANN HELFRICH; EDDY HELLEBUYCK; SHAWN M HELLEBUYCK; DAVID HENRICKSEN; JUDITH HENRICKSEN; CAREYN HENSLEE; GALE HENSLEE;

ANGELA HERMOSILLO; CHRISTIAN HERMOSILLO; BERTHA HERNANDEZ; VALENTINO HERNANDEZ; CLEO HICKMAN, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; CLEO HICKMAN, DECEASED, GARET HICKMAN AS EXECUTOR; DOROTHY HICKMAN, DECEASED, DOROTHY HICKMAN AS PERSONAL REPRESENTATIVE; DOROTHY HICKMAN, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; SIDNEY HICKS; MATHEW HILL; SUSAN HILL; VALERIE HILL; DONALD HINDSLEY; VALERIE HINES; MEGAN LYNNE HINKLE; RANDY DEWAYNE HINKLE; DAVID HOAR; SAMSON NEAL HOLLINS; KARLA HOOVER; TEDDY EUGENE HOOVER; JOSEPH HORNICK; LADONIA HORNICK; DEBORAH HOYT; PATRICIA ALMESTICA HUELST; GARY HUGGINS; VIRGINIA JAN HUGGINS; THERESA HUGHES; PATRICIA HUNT; RICHARD HUNT; BRIAN IMBODEN; ROBERT INGRAM; BARBARA ISHIMATSU, TRUSTEE; JANET JENDZEL; JOHN JENDZEL; BRUCE JENKINS SR, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; TOMMIE JEAN JOHNSON; WILLIAM JOHNSON; ALICE JONES; JIM JONES; BETTE JUHL; ROBERT JUHL; WADE JUHL; IRENE KALITA; MATHEW KARGARZADEH; B BRAD KASPEREK; JAY KAUFMAN; LINDA LOUISE KELLY; EUGENE KEMPTON; PATRICIA KEMPTON; AMY FRANCHESCA KIGER; KRISTOPHER MICHAEL KIGER; MICHAEL KIMBER; SHERYL KIMBER; LOVELLA KIRBY; KATHLEEN KIRK; BRIAN KIRK, DECEASED, HIS DEVISEES

AND PERSONAL REPRESENTATIVES; ROSALIE KLEVE; WILLIAM KLEVE; SHANNAN KNUDSEN; CAROL KNUTSON; HARVEY KOEHLER; JANET KOOPS; JOE KOOPS; DANIEL LAMBERT; HYLA LAMP; RONALD LAMP; DIANNE LAVRINC; JOHN LAVRINC; LEEANN LEAZIER; EDMUND LEE, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; MARILYN LEE, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; LEIGH ANNE LEONARD; JAMES LESTER; VICKY LESTER; CARRIE LEWEY; JASON LEWEY; MICHELE LINGBECK; JAMES LITSEY; MARK LITSEY; JACQUELINE LOEBENSTEIN, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; KERRY LOETSCHER; NICHOLAS LOETSCHER; CHRISTINA LOHMANN; MATTHEW STEVEN LOHMANN; JANICE LONG; CAROL LOVOI; DEBORAH LUCAS; ROBERT LUCAS; KIRK LUNDBERG; SAMANTHA LUNDBERG; JOHN LYONS, DECEASED, BY JAN LYONS-LAMB AS EXECUTOR; JOHN LYONS, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; JANINE MABE; JANET MACEYKO; C LIANA MADRID; DARIO MADRID; AMARANTE MAESTAS; IRENE MAESTAS; ELAINE MAHER; TIMOTHY MAHER; RAMIN MAHMOODI, AS TRUSTEE OF THE MAHMOODI REVOCABLE TRUST DATED 3/25/2019; MABEL MAIER; WALTER MAIER; DEBORAH MALLION; DONALD MALLION; BRANDI MARKS; JAMES EDWARD MARTIN; SHANDA SAMELIA MARTIN; DOLORES MARTINEZ; JANICE

| |
|---|
| MARTINEZ; JOHN MARTINEZ; JOSEPH MARTINEZ; PATSY MARTINEZ; RAYNALDO LAWRENCE MARTINEZ; JANA MASON; JOHN MASON; JEFF MATHIEWS; MARGARET MATHIEWS; SUSAN MCCLELLAN; THOMAS MCCLELLAN; CYNDI MCDONALD; DAVID MCDONALD; JAN MCENTIRE; LARAMIE MCENTIRE; AMY MCKINNEY; ANDREW MCKINNEY; GERALDINE MARQUEZ MCPHERSON; ROCKEY MCPHERSON; BARRY MCVINNEY; CAROLYN BURLESO MEACHAM; HEATHER MEDINA; WILLIAM MEEK; BRAD MELTABARGER; DONNA MELTABARGER; FRED JURGEN MENSINGA; LINDA MENSINGA; GREGORY MERRELL; JESSICA MILLER MERRELL; JOHN MERRITT; PATRICIA C MERRITT; DUSTIN MEYERS; BILLY JOE MILLER; DEBRA JEAN MILLER; FREDERICK MILLER; SARAH MILLER; CAREY MILLIGAN; PATSY MILLIGAN; ERNESTINE MILLNER; ROBERT MILLNER; LYNN MOCK; RONALD MOCK; DOUGLAS MOECKEL; GUY MOECKEL; MELVA MOECKEL; MERLYN MOECKEL, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; GILDARDO MONTES; CARLOS MONTOYA; LUCILLE MONTOYA; KRISTI MOORE; WILLIAM MOORE; CHARLES MOORE, TRUSTEE; PENELOPE MOORE, TRUSTEE; ELIZABETH MORGAN, AS TRUSTEE OF THE ROY R AND ELIZABETH I MORGAN REVOCABLE TRUST; ROY MORGAN, AS TRUSTEE OF THE ROY R AND ELIZABETH I MORGAN REVOCABLE TRUST; ERIC MORK; MEREDITH MORK; FARRELL MORTON; JACKIE MORTON; JACKIE MORTON, BY |

PATRICK MORTON AS POA; MOVE UNITED; MOVE UNITED BY BLOSSOM, JOHN AS AGENT; MOVE UNITED BY SEROTA, KERI AS AGENT; HANS MUEH; SALLY MUEH; ANTONY MULLET; LEROY MULLET; STEVEN MULLET; GWEN MYERS; JERALD MYERS; MYERS SPORTING AND SUPPLY; FLOR NARVAEZ; PABLO LUIS NARVAEZ; JEFFREY NAVIAUX; LETICIA NAVIAUX; CYNTHIA NEDER; DONALD NEWSOME; SHERRI NEWSOME; DONALD NICHOLLS; JANIS NICHOLLS, TRUSTEE; CRYSTAL NIXT; GARY NOBLE; DALE NORDBERG; JANET KATHERINE OBERLE; CANDICE LEE OBRIEN; PETER OBRIEN; ALICE OFFUTT; HEATHER OFFUTT; PAUL OFFUTT; MELODY OKESON; NEIL OKESON; ALLEN OLIVER; HARRIET OLIVER; CATLIN OROURKE; JAMES OVER; LAURA PADAWER; ROBERT PADAWER, TRUSTEE; IDA PADILLA; KATRINA PADILLA; DEAN PAPPAS; HELEN PAPPAS; PAMELA PARKIN; PARTNERSHIP HPJ FAMILY LTD; JOHN PAUL; SHARON PECQUET; MELISSA PENA; ROBERT PENA; PHILLIP PENNINGTON; ERIC PETERSON; JOY PETERSON; MARCENE PETERSON; JEROME PITNEY; NEOMA PITNEY; KRISTEN PITT; ANGUS POMEROY; CAROL POMEROY; C JENETTE PORTER; DONTE PORTER; RICHARD PORTER; MARY POTTER, AS TRUSTEE OF THE POTTER FAMILY TRUST; ANGELA POUNDS; CRISTI POWELL; JAMES POWELL; ALOIS PRAXMARER; MARIA PRAXMARER; NICHOLAS PUGLIESE; TAMMY PUGLIESE; JEFFREY PYLANT; TERESA PYLANT; ANGELITO QUIJANO;

THELMA BINOSA QUIJANO; CATHY RAPP; ROBERT RAPP; GREGORY LEE RAY; SHARON GAY RAY; KAREN RAY, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; BEVERLE REDDIN; TIMOTHY REDDIN; CURTIS REINKE; ANAREINA REYES; BENEDICT VILORIA REYES; AARON RICHARD; JAY RILEY; BRENDA RIVERA; KENT RIXON; PAULA RIXON; CHRISTINE ROBERTSON, DECEASED, BY JERRY ROBERTSON AS EXECUTOR; CHRISTINE ROBERTSON, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; MARSHA ROBERTSON, TRUSTEE; TOM ROBERTSON, TRUSTEE; KATHERINE ROBINSON; DONALD M RODWANCY; TERRY RODWANCY; JOE LEWIS ROGERS; FRANK ROSS; TAMARA ROSS; DAWN ROUCKUS; MICHAEL ROUCKUS; ROYAL DEVELOPMENT INC; KAREN RUE; EPPIE SALAZAR; SUSIE SALAZAR; GREGORY SAMARDZICH; HOWARD SANFORD; LANA SANFORD; LUCIA SANTINI; BARBARA SAVAGE; DERALD SAWYER; GRETA SAWYER; LAUREN SCHAFER; TRENT SCHAFER; CHRISTOPHER SCHAGEL; GERALD SCOVEL, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; SUE MULLET SEC; RAUL ALMESTICA SERRANO; JASON SEVERE; VERONICA VALENTINO SEVERE; ROBBIN SHEFSKI; BRANDON SHEPHERD; KAROL SHEPHERD; JAN SIEBERSMA; SAUNDRA SIEBERSMA; LURON SINGER; MICHAEL SINGER; PAUL ALAN SKARTVEDT; SHANNON LEE SKARTVEDT; SHELLEY SKEELE; DAVID

FRANK SLATER; VICKI LYNN SLATER; ALIX SMALL; DANIEL SMALL; BRUCE SMITH; CAROLINE WAREHAM SMITH; CHRISTOPHER SMITH; DEON SMITH; MELISSA ANN SMITH; MINDY SMITH; PATRICIA SMITH; REOLA SMITH; RICKY SMITH; BARBARA SOTH; JAMES SOTH; TERRANCE SOTH; MELESHA SPEARS; LUANN STEFFEN; KAREN STEINBRINK; LOREN STEINBRINK; ALVIN STINSON; ELIZABETH STOLTZFUS; JAY STOLTZFUS; IAN STRAUB; JOAN HIGHAM STRAUB; LINDA STULGIS; DAYVA SPITZER SUCC TRUSTE; SAMUEL TACKETT; DONNA TACKETT, DECEASED, HER DEVISEES AND PERSONAL REPRESENTATIVES; JOSEPHINE TAFOYA; JUAN TAFOYA; BRANDON TALLEY; DONNA KAY TALLEY; BEULAH TETREAU; JERRY TETREAU; HARVELAN THOMPSON; PHILLIP THOMPSON; MARK THOMPSON, AS TRUSTEE OF THE THOMPSON FAMILY TRUST; MICHAEL THRONEBURG; LETA RUTH TILLMAN; WILLIAM MORRIS TILLMAN JR; MARIUS TIMIS; MARCELLA TORRES; MARK TORRES; BRETT TOSCH; VANESS TOSCH; RITA TREGELLAS; WILLIAM TREGELLAS; VIRGINIA TRUMPBOUR; THOMAS WILLIAM TUCKER; JANET KIM FEMINO TUOHY; SANDRA ULYSSE; ROSA URRUTIA; SALVADOR URRUTIA; JANET USINGER; PATRICIA VANDERMAAS; DOLORES VASQUEZ; LUIS MANUEL VASQUEZ; HEATHER WALKER; LINDA WALLINE; MICHAEL WALLINE; CAROLYN WALVOORD; SHAUN WALVOORD; JERALD WATSON; KAREN WATSON; PAMELA JEAN BASSETT WEAVER;

STEVEN CRAIG WEAVER; JULIANA WEBER; CARA WEEDEN; RODNEY WEEDEN; BARBARA MARIE WESELOH; ANTIA WESOLOWSKI; DANIEL WESOLOWSKI; ALBERT WHEELER; MELINDA WHEELER; LEON WHITTINGTON; ROYAL WILEY; SHELLY SPENCE WILEY; DAVID WILKERSON; DEBRA WILLIAMS; JEFFREY WILLIAMS; B SUSIE WILLIAMSON; JEFF WILLIAMSON; RICHARD WILLSTEAD; TAMMY WILLSTEAD; WILROSE CORPORATION; GEAN WINGERT, DECEASED, BY ANISETO ROMERO AS EXECUTOR; GEAN WINGERT, DECEASED, HIS DEVISEES AND PERSONAL REPRESENTATIVES; HUNG NGUYEN WINN; LEE WINN; GLENDA WISE; L RODNEY WISE; BRIAN KEITH WOOD; ELIZABETH WOOD; GEORGE WOOD; JANET WOOD; SHEILA LUELLA WOOD; THOMAS WOOD; WANDA LEE WOOD; CARTY ROSALIA YORK; JON YORK; KAREN YORK; THOMAS WAYNE YORK; JOHN ZWALD; PAT ZWALD,

Defendants.

**FIRST AMENDED COMPLAINT TO AUTHORIZE SALE OF DEBTOR AND NON-DEBTOR CO-OWNERS' INTERESTS IN REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)**

Plaintiff, Masters Place Condominiums Property Owners Association, Inc. (the "Plaintiff," "Association," or "Debtor"), files this *First Amended Complaint to Authorize Sale of Debtor and Non-Debtor Co-Owners' Interests in Real Property Pursuant to 11 U.S.C. § 363(h)* (the "Complaint") seeking relief pursuant to 11 U.S.C. § 363(h) against

the above-named defendants (collectively, the "Defendants" or "Owners"). In support of the Complaint, Plaintiff states and alleges as follows:

## PRELIMINARY STATEMENT

The Association is filing this Complaint seeking authority to sell the Property, which is described and defined below, including the interests of the Association and the Defendants in the Property. The Association is ***not*** seeking monetary judgment against any of the Defendants in this Complaint. Rather, the Association anticipates that each Defendant, subject to any setoff for amounts due to the Association and confirmation of their ownership interest, will ultimately receive money from the sale of the Property.

## THE PARTIES

1. The Association is a nonprofit corporation organized under the laws of the State of Colorado pursuant to Articles of Incorporation filed with the Secretary of State of the State of Colorado on March 14, 1989 in Book 246 at Page 96 et seq. (the "Articles of Incorporation"). Pursuant to the Articles of Incorporation, the Association was organized, "*[t]o own, operate, manage, lease, maintain, repair, and generally administer the affairs of the property and improvements located within Masters Place Condominiums, a condominium and time-share regime ('Condominium Project') located in Archuleta County, Colorado, and to have all of the powers granted it by the Declaration, as the same may be amended from time to time.*"

2. The Association was formed pursuant to a Declaration of Condominium and Interval Ownership for Masters Place Condominiums (the "Original Declaration") recorded in the Office of the County Clerk and Recorder for Archuleta County, Colorado (the "Clerk's Office") on March 14, 1989 at Book 246, at Page 26, et seq., as amended by that certain Amendment To Declaration of Condominium and Interval Ownership for

Masters Place Condominiums ("Amendment") dated February 21, 1990 recorded in the Clerk's Office on February 23, 1990 at Book 284, at Page 35, and that certain First Supplemental To Declaration of Condominium and Interval Ownership for Masters Place Condominiums ("First Supplemental Declaration") dated January 23, 1991 recorded in the Clerk's Office on February 7, 1991 at Book 322, at Page 73. The Original Declaration, Amendment and First Supplemental Declaration are collectively referred to as the "Declaration."

3. The Declaration established the Association and submitted the property identified in the Declaration to a "Condominium Project subject to a Plan of Interval Ownership and create[s] therein a time-share program in accordance with COLO. REV. STAT. §§38-33-110 and 38-33-111 …." The Declaration serves as the project instrument for the interval ownership regime.

4. Pursuant to Section LL of Article I of the Declaration, "*[t]he term 'Unit Committed To Interval Ownership' shall mean any Unit sold under a plan of Interval Ownership.*"

5. Pursuant to Section Y of Article I of the Declaration, *"[t]he term 'Interval Owner' or 'Owner' shall mean a Person owning one or more Interval Ownership interests in a Unit Committed To Interval Ownership, whether entirely, jointly, or in common with another Person or Persons."*

6. Pursuant to Section Z of Article I of the Declaration, *"[t]he term 'Interval Ownership' shall mean that form of real property ownership in a Unit Committed To Interval Ownership by which an Interval Owner is entitled to occupy a Unit Committed to Interval Ownership on an annual or biennial and recurring basis during a designated time*

*period ("Unit Week") for a period of years, together with a remainder over in fee simple as a tenant in common with other Owners."*

7. Pursuant to Section A of Article I of the Declaration, *"[t]he term 'Annual Interval Ownership Interest' shall mean that interest consisting of either a Fixed Annual Unit Week or a Floating Annual Unit Week and an undivided 1/51 remainder interest, for each Annual Interval Ownership Interest owned, as a tenant in common with all other Owners in the Unit in which the Annual Interval Ownership Interest is owned upon termination of the Interval Ownership regime created by this Declaration."*

8. Pursuant to Section B of Article I of the Declaration, *"[t]he term 'Annual Unit Week' shall mean the time period, designated by Building Number, Unit Number, and Unit Week Number during which an Owner is entitled to occupy a Unit Committed To Interval Ownership on an annual and recurring basis for a period of years, subject to the terms of this Declaration, the Articles of Incorporation, the Bylaws, and Rules and Regulations."*

9. Pursuant to Section S of Article I of the Declaration, *"[t]he term 'Fixed Annual Unit Week' shall mean the time period during which the Owner of an Annual Interval Ownership Interest is entitled to occupy a designated Unit Committed To Interval Ownership during the same Unit Week Number on an annual and recurring basis."*

10. Pursuant to Section T of Article I of the Declaration, *"[t]he term 'Fixed Biennial Unit Week' shall mean the time period during which the Owner of a Biennial Interval Ownership Interest is entitled to occupy a designated Unit Committed To Interval Ownership during the same Unit Week Number on an alternate year basis."*

11. Pursuant to Section K of Article I of the Declaration, *"[t]he term 'Common Elements' shall mean and include all of the real property and real property improvements of the Condominium Project with the exception of 'Condominium Unit(s)' …."*

12. Pursuant to Section B of Article X of the Declaration, each Interval Owner is granted a non-exclusive easement for ingress and egress through the Common Elements.

13. Pursuant to Section C. of Article III of the Declaration *"Common Elements shall include all portions of the Condominium Project not contained within a Unit, including, but not limited to, roofs, foundations, pipes, ducts, flues, conduits, wires, and other utility installations to the outlets, bearing walls, perimeter walls to the undecorated or unfinished interior surfaces thereof, sidewalks, parking areas, gardens, recreational facilities which are now or hereafter continued within the property, all Limited Common Elements as defined herein, all installations of power, gas, hot and cold water, and cable television existing for common use, all other parts of the Condominium Project necessary or convenient to its existence, maintenance, or safety, and all areas and facilities designated as Common Elements in the Condominium Act. All Common Elements not specifically designated in this Declaration (or any amendment(s) hereto) or upon the Phase I Plat (or any amended or subsequent plat(s) of the Condominium Project) as Limited Common Elements shall be General Common Elements."*

14. The original By-Laws for the Association were dated April 28, 1988, and recorded in the Clerk's Office on March 14, 1989 (the "Original Bylaws"). The Original Bylaws were amended in 1993 and recorded in the Clerk's Office on December 29, 1993. The Original Bylaws were further amended and replaced with new bylaws on August 14,

1998, and recorded in the Clerk's Office on June 28, 1999 as Reception No. 99096215 (the "First Amended Bylaws"). The First Amended Bylaws were thereafter amended and recorded in the Clerk's Office on February 19, 2009 as Reception No. 20901136 (the "Second Amended Bylaws" and together with the Original and First Amended Bylaws, hereafter, the "Bylaws").

15. Section 2 of Article I of the Bylaws provides that the Association "shall consist of all members acting as a group in accordance with the Articles of Incorporation and these Bylaws" (individually an "Association Member" and, collectively, the "Association Members").

16. On or about January 20, 2026 (the "Petition Date"), the Association filed a voluntary petition for relief pursuant to Subchapter V of title 11 of the United States Code (the "Bankruptcy Code").[1] Since the Petition Date, Association has remained in possession of its assets and has continued management of its property, business, and affairs.

17. As of the Petition Date, the Defendants and Association co-own tenant-in-common fee simple interests in the Property.

18. The Defendants A are tenant-in-common owners of fee simple interests at the Property as identified on the Association's books and records as of May 13, 2026.

**JURISDICTION AND VENUE**

19. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

20. This is a core proceeding pursuant to 28 U.S.C. §§ 157(a), and 157(b)(2)(A), (N) and (O).

[1] All references to the "Bankruptcy Code" herein refer to 11 U.S.C. §§101-1532.

21. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

22. The statutory predicates for the relief sought herein are sections 105(a) and 363 of the Bankruptcy Code, including section 363(h), and rules 7001 et. seq. of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), including Bankruptcy Rule 7001(c).

23. The Association consents to the entry of final orders and judgement by the Court.

## COMMON ALLEGATIONS

### A. The Property

24. The property subject to the Declaration, and governed by the Association, is located at 1093 Northlake Ave., Pagosa Springs, Colorado (the "Property").

25. The Property is commonly known as *Masters Place Condominiums* and consists of two buildings containing twenty units (the "Units") and their concomitant Common Elements.

26. As authorized by more than the required number of Owners prior to the Petition Date, (i) occupancy at the Property by Owners, guests and others was suspended as of December 27, 2025, and (ii) collection of 2026 maintenance fees from Owners was suspended.

27. The Association, via its contract with a management company, continues to maintain the Property as debtor-in-possession pursuant to Sections 1181 and 1184 of the Bankruptcy Code so that the Property can be sold for its highest and best value.

**B. The Ownership Structure of the Property**

28. The buildings were constructed and added to the timeshare plan in two phases. Building One contains eight units subject to Interval Ownership. Building Two contains twelve Units subject to Interval Ownership.

29. Pursuant to Section A of Article V of the Declaration, each Unit Committed to Interval Ownership contains fifty-two Annual Interval Ownership interests (the "Unit Weeks"). These Unit Weeks may be subdivided into two "Biennial Interval Ownership Interests." There are 1,040 total Unit Weeks at the Property.

30. The Association owns one Unit Week (a maintenance week) in each Unit and a concomitant share of the Common Elements at the Property. Accordingly, the Association owns an interest in every Unit at the Property.

31. Pursuant to a deed dated September 3, 2025, recorded on September 4, 2025, at Document #22503609 in the Clerk's Office, the Association owns one Unit Week in each Unit Committed to Interval Ownership at the Property as follows:

- Building One – Units 7301, 7302, 7303, 7304, 7305, 7306, 7307, and 7308, Week 14; and
- Building Two – Units 7309, 7310, 7311, 7312, 7313, 7314, 7315, 7316, 7317, 7318, 7319 and 7320, Week 15

32. The Association owns twenty Unit Weeks at the Property and a concomitant share of the Common Elements at the Property (the "Association Interest"), which comprises approximately 1.92% of the total Unit Weeks at the Property.

33. The Association owns an undivided interest in the Property as a tenant-in-common with all other Owners.

34. According to the records of the Association, as of May 13, 2026, Defendant First American Trust, FSB, as Trustee, Duly Appointed Under the Declaration of Trust for the Club Wyndham Access Vacation Ownership Plan ("First American Trust, as Trustee") owns 267 of the 1,040 Unit Weeks at the Property, and a concomitant share of the Common Elements at the Property. First American Trust, as Trustee, owns approximately 25.67% of the total Unit Weeks at the Property. First American Trust, as Trustee, is a tenant-in-common with all other Owners at the Property as well as the Association.

35. According to the records of the Association, as of May 13, 2026, Defendant WorldMark, the Club ("WorldMark, the Club") owns 301 of the 1,040 Unit Weeks at the Property, and a concomitant share of the Common Elements at the Property. WorldMark, the Club owns approximately 28.94% of the total Unit Weeks at the Property. WorldMark, the Club is a tenant-in-common with all other Owners at the Property as well as the Association.

36. According to the records of the Association, as of May 13, 2026, Defendant Wyndham Vacation Resorts, Inc. ("WVR") owns 102 of the 1,040 Unit Weeks at the Property, and a concomitant share of the Common Elements at the Property. WVR owns approximately 9.81% of the total Unit Weeks at the Property. WVR is a tenant-in-common with all other Owners at the Property as well as the Association.

37. According to the records of the Association, as of May 13, 2026, the remaining 350 of the 1,040 Unit Weeks at the Property, and a concomitant share of the Common Elements at the Property, are owned by approximately 643 parties to approximately 350 contracts (collectively, the "Interval Owners"). The Interval Owners

own approximately 33.65% of the total Unit Weeks at the Property. The Interval Owners are tenants-in-common with all other Owners at the Property as well as the Association.

38. The Defendants do not currently occupy the Units at the Property.

39. Accordingly, no Defendant will be displaced from their home by the proposed sale of the Property.

40. Upon the filing of the Petition, the Association Interest owned by the Association became property of its bankruptcy estate pursuant to 11 U.S.C. § 541(a), and the Association is otherwise a tenant in common with the Defendants.

**C. The Potential Sale of the Property**

41. Sale of the Property free and clear of the interests of the Association and Defendants provides the ability to attain the highest and best offer for the Association and Owners.

42. On April 17, 2026, the Association filed *Debtor's Motion for Entry of an Order (I) (A) Approving Auction and Bidding Procedures, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder, (C) Scheduling Bid Deadlines and Auction, and (D) Approving the Form and Manner of Notice Thereof, and (II) Granting Related Relief* (Docket No. 126) (the "Bid Procedures Motion") seeking to establish procedures to market and sell the Property, including the Association Interest in the Property, together with the interests of (i) First American Trust, as Trustee, (ii) WorldMark, the Club, (iii) WVR, and (iv) all other Owners.

43. On May 13, 2026, the Bankruptcy Court entered the *Order (I) (A) Approving Auction and Bidding Procedures, (B) Authorizing the Debtor to Designate a Stalking Horse Bidder, (C) Scheduling Bid Deadlines and Auction, and (D) Approving the Form*

*and Manner of Notice Thereof, and (II) Granting Related Relief* (Docket No. 142) (the "Bid Procedures Order"), which granted the Bid Procedures Motion. The Bid Procedures Order accounts for and resolves the Defendants' rights under 11 U.S.C. § 363(i).

44. Pursuant to the Bid Procedures Order, the Association is marketing the Property (including related personal property, if any) for sale. As of this date, the Association has not presented a proposed sale to the Bankruptcy Court for approval.

45. On April 17, 2026, the Association filed the *Masters Place Condominiums Property Owners Association, Inc.'s Plan of Liquidation* (Docket No. 129) (the "Plan"). The Plan remains pending before the Court and is subject to its approval.

46. Any ultimate disposition of the Property, and any proposed distribution of proceeds of any sale, shall be subject to separate request(s) of the Association to the Court and subject to separate judgment(s) or order(s) of the Court (including, potentially pursuant to an order confirming the Plan).

47. The Association intends to separately seek orders or judgments from the Court (i) determining the extent of the ownership interest of each Defendant, and the amount due by each Defendant for outstanding maintenance fees or assessments to the Association, if any, and (ii) authorizing the distribution of the proceeds of any sale approved by the Court, less the costs and expenses of such sale as may be approved by the Court (which may include any order confirming the Plan).

**D. Proposed Consent Judgments**

48. At a special meeting of the members of the Association conducted on October 7, 2025, with a quorum of the voting interests represented in person or by proxy, more than 98% of the members of the Association in attendance voted to authorize the

Board of Directors to file a chapter 11 bankruptcy petition for the Association to, among other things and subject to Court approval, market and sell the entire Property, free and clear of the interests of all Owners (as well as the Association), with such interests to attach to the proceeds of sale, subject to distribution pursuant to Court order.

49. Association believes that many Defendants will consent to the relief sought in this Complaint.

50. Together with the Complaint, Association is providing each Defendant with a *Stipulation and Consent Judgment* (a "Consent Judgment") offering to resolve the Complaint and this adversary proceeding as to each Defendant.

**COUNT 1 – SALE OF REAL PROPERTY PURSUANT TO 11 U.S.C. § 363(h)**
**(Against All Defendants)**

51. The Plaintiff repeats and realleges the allegations set forth in all preceding paragraphs of this Complaint, as if set forth at length herein.

52. The Plaintiff requests the Court enter judgment against each Defendant named herein authorizing Plaintiff to sell the Plaintiff's interest in the Property together with the Defendants' interests in the Property, pursuant to 11 U.S.C. § 363(h).

53. As of the Petition Date, the Plaintiff and the Defendants co-owned the Property as tenants-in-common.

54. As of the Petition Date, the Plaintiff had an undivided interest in the Property as a tenant-in-common.

55. Partition in kind of the Property among Plaintiff and the Defendants is impracticable. Due to the large number of the Owners of the Property and the timeshare structure of the Property, a standard partition action would be unwieldy, prohibitively expensive, and necessitate the use of a less formal process under state law.

56. Sale of the Plaintiff's undivided interest in the Property would realize significantly less for the Plaintiff's bankruptcy estate than sale of the Property free of the interests of the Defendants. The market for individual timeshare interests is substantially discounted from the sale of the Property as a whole, considering the fraction of each individual interest and the limited nature and rights that correspond to such interests.

57. The benefit to the Plaintiff's bankruptcy estate of selling the Property free of the interests of the Defendants in the Property outweighs the detriment, if any, to the Defendants – none of whom are full-time occupants of the Property.

58. Defendants' interests in the Property will attach to the sale proceeds and shall only be disbursed subject to further judgments or orders of the Court.

59. The Property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power.

60. All requirements for a sale of the Property pursuant to 11 U.S.C. § 363(h) are satisfied.

**WHEREFORE**, the Plaintiff respectfully requests that the Court enter a judgment in favor of Plaintiff against each Defendant:

(a) authorizing Plaintiff to sell the Plaintiff's interest in the Property together with the Defendants' interests in the Property (including related personal property, if any), pursuant to section 363(h) of the Bankruptcy Code and rule 7001(c) of the Bankruptcy Rules, provided that any sale of the Property shall be subject to further order of the Bankruptcy Court pursuant to the Bid Procedures Order or otherwise;

(b) authorizing the Plaintiff to execute on behalf of the Defendants any and all necessary documents to consummate a sale of the Property, including, but not limited to,

deeds, assignments, affidavits, certifications, resolutions, authorizations, closing statements, title documents, recording documents, and any other instruments as may be necessary or prudent in connection therewith;

(c) pursuant to section 363(j) of the Bankruptcy Code, directing that after a sale of the Property pursuant to section 363(h) of the Bankruptcy Code, the Plaintiff shall distribute to the Defendants, according to the Defendants' interests in the Property as determined by further order of the Bankruptcy Court, the proceeds of such sale less the costs and expenses of such sale, which, for the avoidance of doubt include, but are not limited to, (i) those reasonable costs and expenses (including professional fees and commissions) incurred by the Plaintiff in connection with the Bid Procedures Motion and Bid Procedures Order, (ii) the marketing and sale of the Property, (iii) the closing of a sale of the Property, (iv) this Complaint and adversary proceeding, (v) the determination of Defendants' interests in the Property, and (vi) any distribution of sale proceeds, which amount of such costs and expenses (including professional fees and commissions) shall be determined by further order of the Bankruptcy Court; and

(d) granting the Plaintiff such other relief that this Bankruptcy Court deems just and equitable.

Dated: July 16, 2026

Respectfully submitted,

*/s/ Kevin S. Neiman*

Kevin S. Neiman, #36560
**Law Offices of Kevin S. Neiman, pc**
P.O. Box 100455
Denver, CO 80250
Telephone: (303) 996-8637
Email: kevin@ksnpc.com

- and -

Brandy A. Sargent
**K&L GATES LLP**
One SW Columbia Street, Suite 1900
Portland, OR 97204
Telephone: (503) 228-3200
Email: brandy.sargent@klgates.com

- and -

Daniel M. Eliades
Peter J. D'Auria
**K&L GATES LLP**
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4000
Email: daniel.eliades@klgates.com
peter.dauria@klgates.com

- and -

Jonathan N. Edel
**K&L GATES LLP**
300 South Tryon St., Suite 1000
Charlotte, NC 28202
Telephone: (704) 331-7400
Email: jon.edel@klgates.com

Counsel for Debtor and Debtor-in-Possession